In 1983, Randy Turpin Bell was indicted and convicted for the 1981 robbery-murder of Charles Mims and sentenced to death as authorized by Alabama Code 1975, § 13A-5-40(a)(2). That conviction and sentence were affirmed on appeal. Bell v. State,475 So.2d 601 (Ala.Cr.App. 1984), affirmed, Ex parte Bell,475 So.2d 609 (Ala. 1985), cert. denied, Bell v. Alabama,474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985).
In 1986, Bell filed a petition for writ of error coram nobis, which was denied after an evidentiary hearing. The petition was heard by the same circuit court judge who presided over Bell's trial. On this appeal from that denial six issues are raised.
 I
In the guilt-determining phase of Bell's trial, the judge charged the jury on the capital robbery-murder charged in the indictment and on the lesser included offenses of murder and robbery. Bell now argues that the jury should also have been instructed on the lesser included offenses of robbery in the second and third degrees and "attempted robbery" in the second and third degrees.
In denying the petition, the trial judge wrote a thorough and comprehensive order. He found that this claim was barred from review because it was not raised at trial or on direct appeal:
 "This claim, enumerated in paragraphs 1 and la of the petition, is barred from review by a writ of error coram nobis because it could have been raised at trial and on direct appeal but was not. Coram nobis is not available to review new issues that were not raised at trial or on direct appeal. Ex parte Ellison, 410 So.2d 130, 132 (Ala. 1982); Gwin v. State, 456 So.2d 845, 845
(Ala.Crim.App.), cert. denied, No. 83-1143 (Ala. 1984); Magwood v. State, 449 So.2d 1267, 1268
(Ala.Crim.App. 1984) (capital case); Jackson v. State, [Ms. 6 Div. 11, Oct. 14, 1986] [501] So.2d [542] (Ala.Crim.App. 1986) (capital coram nobis). The failure to raise an issue which could have been raised at the original trial or on direct appeal bars the remedy of coram nobis review. Ex parte Boatwright, 471 So.2d 1257, 1259 (Ala. 1985) (J. Maddox concurring specially). Coram nobis is not a means to obtain a second appeal. Bass v. State, 417 So.2d 582, 584 (Ala.Crim.App.) cert. denied, 417 So.2d 588 (Ala. 1982). Petitioner cannot now for the first time raise issues available to him at trial. Ex parte Rudolph, 276 Ala. 392, 393, 162 So.2d 486 (1964); Summers v. State, 366 So.2d 336, 340 (Ala.Crim.App. 1978), cert. denied, 366 So.2d 346 (Ala. 1979). Because this issue was not raised at trial or on direct *Page 842 
appeal, petitioner is not entitled to a hearing or relief on this claim."
An instruction on a lesser included offense must be given only if " 'there is any reasonable theory from the evidence which would support the position.' " Ex parte Julius,455 So.2d 984, 986 (Ala. 1984) (emphasis added), cert. denied, Julius v.Alabama, 469 U.S. 132, 195 S.Ct. 817, 83 L.Ed.2d 809 (1985), quoting from Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049,72 L.Ed.2d 367 (1981). "The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." Alabama Code 1975, § 13A-1-9(b) (emphasis added). Bell's arguments for instructions on robbery and attempted robbery in the second and third degrees are based on conjecture, speculation, and a vivid imagination. Additionally, given the alternative verdicts available to the jury and the verdict they returned, it is illogical to conclude that they might possibly have found Bell guilty of simple robbery or "attempted robbery" in any degree. Phelps v. State,435 So.2d 158, 166 (Ala.Cr.App. 1983). Additionally, we note that "[o]ur robbery statutes now define robbery as including what formerly would have been an attempt to commit robbery." Ex parteCurry, 471 So.2d 476, 478 (Ala. 1984).
 II
Bell contends that the trial judge committed reversible error in failing to charge the jury on the law regarding the testimony of accomplices and that that failure prevented the jury from making its own determination as to whether or not State's witness Michael Joe Hubbard was an accomplice and whether the evidence was sufficient to corroborate his testimony.
Although there were two amendments to the original coram nobis petition, this particular issue was never raised in the coram nobis proceeding. For the same reasons stated in Part I of this opinion, we find that this issue, presented here for the first time, has not been preserved for review.
Additionally, the issue of the failure of the trial judge to instruct the jury on the law of accomplices was decided adversely to Bell on direct appeal.
In Ex parte Bell, 475 So.2d 609 (Ala. 1985), cert. denied,Bell v. Alabama, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585
(1985), our Supreme Court found that Bell's requested jury charges on accomplice testimony were properly refused, 475 So.2d at 612-13, and that, even assuming that Hubbard was in fact an accomplice, the evidence sufficiently corroborated his testimony. 475 So.2d at 613-14.
 III
Bell argues that he is entitled to a new trial under the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986).
In denying the petition, the trial judge found and held:
 "This claim, enumerated in paragraphs 6, 6a, 6b and 6c of the petition, is barred from review by a writ of error coram nobis because it could have been raised at trial and on direct appeal but was not. As noted above, as to Claim Three, coram nobis does not lie to review claims that could have been raised at trial and on direct appeal but were not. As this claim could have been raised by an appropriate motion or objection at trial, and no such objection or motion was made, petitioner is not entitled to a hearing or relief on this claim, for the reasons set out its to Claim Three above.
 "In the alternative of this finding of procedural default, Court took testimony at the coram nobis hearing as to this claim in light of the United States Supreme Court decision in Batson v. Kentucky, [476] U.S. [79], 106 S.Ct. 1712
[90 L.Ed.2d 69] (1986).
 "This Court heard testimony from the District Attorney, Janice Williams, that the black members of the venire, whom she peremptorily struck, were not struck because they were black. Williams testified that she struck the black members of the venire because all of them had said they knew petitioner in response to *Page 843 
voir dire questioning. Petitioner presented no evidence to contradict this testimony and the Court finds that it is credible. "This Court finds as a fact that the black venire members were not struck solely because of their race. In addition to being procedurally barred, this claim is without merit."
The United States Supreme Court denied certiorari in Bell's direct appeal of his conviction in 1985. Batson was decided in 1986. "[T]he Batson decision should not be applied retroactively on collateral review of convictions that became final prior to its announcement." Ex parte Love, 507 So.2d 979,980 (Ala. 1987), following, Allen v. Hardy, 478 U.S. 255,106 S.Ct. 2878, 92 L.Ed.2d 199 (1986).
 IV
The trial judge did not engage in a mere mechanical or numerical tallying of the aggravating and mitigating circumstances in sentencing Bell to death.
We agree with the conclusions of the trial judge:
 "This claim, enumerated in petitioner's First Amendment to the petition, is barred from review by a writ of error coram nobis because it was decided adversely to petitioner on direct appeal. Bell v. State, 475 So.2d 601, 608 (Ala.Crim.App. 1984), aff'd, 475 So.2d 609, 616 (Ala. 1985). Coram nobis does not provide the means to relitigate issues already decided on direct appeal. Richardson v. State, 419 So.2d 289 (Ala.Crim.App.) cert. denied, No. 81-937 (Ala. 1982); Bass v. State, 417 So.2d 582, 584 (Ala.Crim.App.), cert. denied, 417 So.2d 588 (Ala. 1982). A coram nobis petition is due to be denied where the claims raised were reviewed on direct appeal. Ex parte Rudolph, 276 Ala. 392, 393, 162 So.2d 486 (1964); Bies v. State, 418 So.2d 940, 941-942 (Ala.Crim.App. 1982); Summers v. State, 366 So.2d 336, 340
(Ala.Crim.App. 1978), cert. denied, 366 So.2d 346 (Ala. 1979). As petitioner's claim was decided against him by the Alabama Court of Criminal Appeals and the Alabama Supreme Court, petitioner is not entitled to a new hearing or relief on this claim."
On direct appeal, this Court "independently weighed the aggravating and mitigating circumstances of this case and . . . agree[d] with the decision of the trial court that death is the proper sentence in this case." Bell, 475 So.2d at 608. Our Supreme Court also "reviewed the propriety of the death sentence in this case, . . . and [found] that the sentence of death was appropriate." Bell, 475 So.2d at 616.
 V
Citing McCleskey v. Kemp, ___ U.S. ___, 107 S.Ct. 1756,95 L.Ed.2d 262 (1987), Bell states that it was "more than likely" that he would receive the death sentence given his "race and economic status and the race and status of his victim." Appellant's brief, p. 33. McCleskey held, among other things, that statistical evidence from the state of Georgia that black defendants who killed white victims have the greatest likelihood of receiving the death penalty was insufficient to demonstrate unconstitutional discrimination in the Fourteenth Amendment context or to show irrationality, arbitrariness, and capriciousness under Eighth Amendment analysis. Although Bell is aware of no similar statistical evidence in Alabama, he "still asserts this issue." Appellant's brief, p. 33. We reject his assertion on authority of McCleskey.
 VI
Aided by the magnifying glass of hindsight and armed with information obtained and legal cases decided after his conviction, Bell contends that his trial counsel was ineffective because he (1) did not challenge the prosecution's striking of blacks from the jury venire, (2) failed to object to the judge's failure to give jury instructions on certain lesser included offenses and the testimony of accomplices, (3) failed to introduce any evidence at the sentencing phase of the trial, and (4) failed to object to the trial court's weighing of the aggravating and mitigating circumstances. *Page 844 
In finding that Bell was not denied the effective assistance of counsel, the trial judge applied the test and standard ofStrickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984), and analyzed defense counsel's performance within that framework. See also Ex parte Daniel, 459 So.2d 948,951 (Ala. 1984), cert. denied, Daniel v. Alabama,471 U.S. 1009, 105 S.Ct. 1878, 85 L.Ed.2d 170 (1985); Ex parte Baldwin,456 So.2d 129, 134 (Ala. 1984), affirmed, Baldwin v. Alabama,472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). In denying the petition, the trial judge found:
"The following are facts concerning Harden's representation as a whole:
"Petitioner Bell was represented by Paul Harden, an experienced and capable criminal defense attorney. Harden was hired to represent petitioner, after petitioner specifically requested him, by Petitioner's mother and stepfather, Aileen and James Austin. In fact, Harden had successfully defended petitioner in another criminal case prior to the capital murder charge against petitioner. At the time of petitioner's trial some 80 percent of Harden's practice was criminal defense work. Harden had tried three capital murder cases with one before petitioner's trial. Harden has served as executive vice-president of the Alabama Criminal Defense Lawyers' Association, and on the Board of Governors of the Alabama Trial Lawyers Association. Harden is and was at the time of petitioner's trial an experienced and competent defense attorney.
"In preparation for petitioner's trial, Harden went to Kilby Prison, where petitioner was being held, at least twice and possibly more. Harden was retained as counsel two to three months prior to trial. Harden filed numerous pretrial motions including an extensive discovery motion. Additionally, Harden met with the District Attorney to confer about the possibility of a plea bargain. Harden discussed an offer of life imprisonment with petitioner, which was rejected. Harden also met and talked with the police officers who had investigated the case.
"Harden also talked with several potential witnesses in preparation for petitioner's trial. Some of these witnesses petitioner had recommended to Harden."
* * * * * *
 "C. Alleged Failure to Prepare For Punishment Stage
"In paragraph 4d of his petition, petitioner claims that his trial counsel was ineffective because he failed to prepare any evidence for submission at the punishment stage before the jury. Petitioner contends that petitioner's family members and friends should have been called as witnesses to elicit allegedly mitigating evidence. In support of this claim, petitioner presented the testimony of Paul Harden, Danzella Peoples, Diane Ware, Tom Bell, Frank Talmadge, James Austin and Aileen Austin. Respondent relied upon the cross-examination of petitioner's witnesses. As to this specific claim, the Court finds that each of petitioner's witnesses testified as they would have at petitioner's trial. Each also testified that they thought petitioner was innocent and that it would be terrible if he were executed. Each of petitioner's witnesses displayed a strong bias in favor of petitioner. These witnesses had no knowledge of petitioner's criminal activities nor of the proven capital murder.
"Each of petitioner's witnesses [was] either a close friend or a relative of petitioner. Each [was] willing to do whatever he or she could to help petitioner. While such devotion is laudable, it would not have been persuasive mitigation sufficient to cause petitioner to be sentenced to life without parole instead of a sentence of death. The failure to call any or all of these witnesses would not make Harden's representation of petitioner ineffective. The failure to present some of this testimony can be attributed to petitioner himself. Harden was instructed by petitioner that he did not want his mother, Aileen Austin, to testify or even for her to be in the courtroom. Harden testified at the coram nobis hearing that he let petitioner make the decision not to call his mother to testify. The testimony Harden anticipated presenting from Aileen Austin would have been to the effect that *Page 845 
petitioner's family was close and possibly a plea for mercy. But after petitioner made the decision not to involve his mother in any way with his trial, Harden did not pursue this further. Harden also testified that there was not any other evidence to use at the punishment stage as mitigation for petitioner.
"Harden testified that he knew that a punishment stage was possible in petitioner's trial and he prepared for one as best he could. Harden attempted to convince the jury that there were weaknesses in the prosecution's case, and that petitioner was convicted on the testimony of an admitted thief, robber and participant in the capital offense. Harden again raised the possibility that the victim might be alive and wanted the jury to hesitate before sentencing petitioner to death.
"Harden was not ineffective for failing to present this allegedly mitigating evidence. Petitioner has not shown that Harden's performance was deficient. The testimony at the coram nobis hearing showed that Harden was a capable and experienced trial attorney who vigorously represented petitioner at trial. Harden made a strategic decision to focus on the possibility that petitioner's victim was alive and the State's reliance on what he contended was an unsavory witness. This decision, made after a pretrial investigation developed no persuasive mitigation, was reasonable and did not render Harden's performance deficient. Trial counsel has no absolute duty to present mitigating evidence. Mitchell v. Kemp, 762 F.2d 886,889 (11th Cir. 1985). Trial counsel is not obligated to present all conceivable mitigating evidence. E.g., Griffin v.Wainwright, 760 F.2d 1505, 1513 (11th Cir. 1985). Trial counsel's strategic decision not to call witnesses is not subject to second guessing. Messer v. Kemp, 760 F.2d 1080, 1092
(11th Cir. 1985); Solomon v. Kemp, 735 F.2d 395, 404 (11th Cir. 1984) ('While attorneys may disagree as to how many or what particular witnesses to call, such is the stuff out of which trials are made.').
"Petitioner has not only failed to show that his trial counsel's performance was deficient, but also has failed to prove prejudice. Petitioner has failed to show that he would not have been sentenced to death had Harden presented this allegedly mitigating evidence. Petitioner, given the opportunity to present evidence to support his claims, has not met his burden of proving that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' Strickland v. Washington, supra,466 U.S. at 694 [104 S.Ct. at 2068].
"Even if the testimony petitioner elicited from his witnesses at the coram nobis hearing had been presented at trial, this evidence would not have constituted mitigation in petitioner's case.
"Petitioner received the effective representation he was guaranteed by the Constitution. Petitioner's conviction and death sentence were not imposed because of any action or failure on the part of his trial counsel. Petitioner was convicted and sentenced to death because of the great weight of the evidence against him."
* * * * * *
 "E. Alleged Failure to Provide The Court With Proper Jury Instructions
"In paragraph 4b of the petition, petitioner alleges that trial counsel was ineffective for his failure to provide the Court with proper jury instructions on the law regarding accomplices and lesser included offenses. In support of this claim, petitioner presented no evidence.
"This Court instructed the jury on the lesser included offenses of murder and robbery in the first degree. Based on the record, this Court finds that trial counsel rendered effective assistance of counsel as regards to the jury instructions on lesser included offenses. Petitioner has not shown that trial counsel's performance was deficient since a proper jury instruction on lesser included offenses was given. Additionally, petitioner has failed to establish that he was prejudiced by trial counsel's actions. There was no showing that the outcome of petitioner's trial would have been different had trial counsel requested *Page 846 
jury instructions on lesser included offenses.
"As to the claim of an accomplice instruction to the jury, the Alabama Supreme Court found that even if Michael Joe Hubbard was determined to be an accomplice, there was corroborating evidence tending to connect petitioner with the commission of the offense, sufficient to make this issue a question of law. Ex parte Bell, 475 So.2d 609, 613 (Ala. 1985). The Alabama Supreme Court then held that there was sufficient corroboration of Michael Joe Hubbard's testimony. 475 So.2d at 613. Thus, an instruction on accomplice testimony would not have changed the outcome of petitioner's trial.
"Petitioner has failed to establish that trial counsel's performance was deficient, and that he was prejudiced in any way by trial counsel's actions as to the Court's charge. There is not a reasonable probability that, but for trial counsel's actions, the outcome of petitioner's trial would have been different. Petitioner is not entitled to relief on this claim.
 "F. Alleged Failure to Challenge The Adequacy of The Trial Court's Weighing Aggravating and Mitigating Circumstances
"In his First Amendment to his coram nobis petition, petitioner alleges that his trial counsel was ineffective for failing to raise the adequacy of the trial court's weighing of aggravating and mitigating circumstances. In support of this claim petitioner relies on trial transcript.
"This Court in its instructions to the jury on aggravating and mitigating circumstances correctly stated that the weighing of these circumstances is not a 'mechanical process' and that 'different circumstances may be given different weights or values in determining the sentence.' There was no error in this Court's jury instruction. At the sentencing stage, this Court considered all the relevant aggravating and mitigating circumstances. This Court also considered the jury's recommendation of the death penalty for petitioner. This Court met the statutory requirements for weighing aggravating and mitigating circumstances. Code of Alabama 1975, §§ 13A-5-47 13A-5-48.
"Petitioner has failed to show that trial counsel's performance was deficient since this Court's actions were proper. Petitioner's trial counsel was not obliged to object without regard to the merits of the objection. Griffin v.Wainwright, 760 F.2d 1505 (11th Cir. 1985); Palmes v.Wainwright, 725 F.2d 1511, 1523 (11th Cir. 1984).
"Petitioner has also failed to establish that he was prejudiced by trial counsel's failure to object to this Court's weighing of the aggravating and mitigating circumstances since the Court's actions were proper. Additionally, the Alabama Court of Criminal Appeals independently weighed the aggravating and mitigating circumstances of petitioner's case and agreed with the decision of this Court, that death was the proper sentence in this case. Bell v. State, 475 So.2d 601, 608
(Ala.Crim.App. 1984). The Alabama Supreme Court reviewed the propriety of the death sentence in petitioner's case and found that the sentence of death was appropriate. Ex parte Bell,475 So.2d 609, 616 (Ala. 1985). There was no prejudice from this Court's weighing of the aggravating and mitigating circumstances. Petitioner is not entitled to relief on this claim.
 "G. Alleged Failure To Object To The Application Of The Death Penalty To Petitioner And Failure To Object To Composition Of The Jury
"In his Second Amendment to his coram nobis petition, petitioner alleges that trial counsel was ineffective for failing to raise objections to numerous items listed in the original petition to which Respondent has raised a procedural default. These claims are enumerated in paragraphs 5, 5a, 5b, 5c, 5d, 5e, 5f, 5g, 6, 6a, 6b, and 6c. Each of these specific claims [is] dealt with below, but for the purposes of petitioner's alleged ineffective assistance of counsel blanket claim, this Court finds that trial counsel was not ineffective in his representation of petitioner as to these claims, at trial or on direct appeal. *Page 847 
"Admittedly, petitioner has the right to effective appellate counsel. E.g., Alvord v. Wainwright, 725 F.2d [1282] 1289, 1291 (11th Cir. 1984). Appellate counsel, however, is not obliged to raise issues reasonably considered to be without merit.Francois v. Wainwright, 741 F.2d 1275, 1285 (11th Cir. 1984).
"In support of this claim, petitioner presented no evidence. Harden's performance on appeal was not deficient for failing to raise frivolous issues or non-existent errors on appeal. This Court finds that there was no error in the selection of the jury in petitioner's case and the arguments against the application of the death penalty in this case are meritless. Petitioner was not prejudiced by Hardin's decision not to assert such issues on appeal. Harden made reasonable strategic decisions in winnowing issues out for consideration on appeal.Smith v. Murray, [477] U.S. [527], 106 S.Ct. 2661, 2667
[91 L.Ed.2d 434] (1986); Jones v. Barnes 463 U.S. 745, 751-752, [103 S.Ct. 3308, 3312-3313, 77 L.Ed.2d 987] (1983). Petitioner's attempt to raise these claims via ineffective assistance of counsel is inappropriate."
"[I]n considering claims of ineffective assistance of counsel, '[w]e address not what is prudent or appropriate, but only what is constitutionally compelled.' United States v.Cronic, 466 U.S. 648, 665 n. 38 [104 S.Ct. 2039, 2050 n. 38,80 L.Ed.2d 657] (1984)." Burger v. Kemp, ___ U.S. ___,107 S.Ct. 3114, 3125-26, 97 L.Ed.2d 6.38 (1987). In Burger, the Court observed that although defense counsel "could well have made a more thorough investigation than he did," the defendant did not receive ineffective assistance of counsel because of his attorney's failure to develop and present any mitigating evidence at the sentencing hearings. ___ U.S. ___,107 S.Ct. at 3125. See also Jackson v. State, 501 So.2d 542, 550-51
(Ala.Cr.App. 1986), cert. denied, Jackson v. Alabama, ___ U.S. ___, 107 S.Ct. 3242, 97 L.Ed.2d 746 (1987). See generally, Annot., 6 A.L.R. 4th 16, § 51 (1981).
We find that the holding of Fleming v. Kemp, 748 F.2d 1435,1452 (11th Cir. 1984), cert. denied, 475 U.S. 1058,106 S.Ct. 1286, 89 L.Ed.2d 593 (1986), is applicable here:
 "In summary, we are not persuaded by petitioner's argument that . . . [defense counsel] rendered him ineffective assistance of counsel. Petitioner's examples of professional dereliction dissolve away under close scrutiny, leaving at best a handful of colorable claims. A defense attorney is not ineffective solely because his client is sentenced to death. 'Intrusive post-trial inquiry into attorney performance,' such as that which has been required in this case, may 'dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.' Strickland v. Washington, [466] U.S. at [690], 104 S.Ct. at 2066. Counsel's performance, here, ensured a fundamentally 'fair trial' which 'produced a just result.' Id. at [686], 104 S.Ct. at 2064. There is reason to set aside petitioner's conviction or his penalty on account of the representation he received."
The record supports the factual findings made by the trial judge. His legal conclusions are sound. The judgment of the circuit court denying the coram nobis petition is affirmed.
AFFIRMED.
All Judges concur.